UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| COUNTRY PREFERRED INSURANCE COMPANY, an Illinois corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>ROBERT HURLESS and HEATHER HURLESS, husband and wife, and the marital community composed thereof,<br><br>    Defendants. | CASE NO. C11-1349RSM<br><br>ORDER ON PENDING MOTIONS |

This matter is before the Court for consideration of two motions, plaintiff's motion for partial summary judgment on defendants' counterclaims (Dkt. # 14), and plaintiff's amended motion for certification of issues of law to the Washington Supreme Court (Dkt. # 28). The Court heard oral argument on these motions on June 1, 2010. For the reasons set forth below, plaintiff's motion shall be granted, and defendants' motion shall be denied.

## FACTUAL BACKGROUND

Plaintiff Country Preferred Insurance ("Country") filed this action for declaratory relief, seeking a declaration that it did not violate the Insurance Fair Conduct Act, RCW 48.30.015 ("IFCA") or the

ORDER - 1

Washington Consumer Protection Act, RCW 19.86 ("CPA") in handling the Hurless' underinsured motorist claim ("UIM").  Defendants in their answer filed six counterclaims against Country: (1) breach of contract;  (2) violation of unspecified sections of the Washington Administrative Code ("WAC");  (3) violation of the Washington CPA;  (4) insurance bad faith, (5) violation of the Washington IFCA;  and (6) treble damages under the IFCA.  Defendants also request attorney's fees pursuant to *Olympic Steamship v. Centennial Insurance Co.,* 117 Wash. 2d 37 (1991).  The Court has jurisdiction of the matter pursuant to 28 U.S.C. § 1223(a)(1) due to the parties' diversity.

The underlying facts are not in dispute.  Mr. Hurless, a self-employed owner-operator of a logging truck, was injured in a two-vehicle accident on September 8, 2009.   There is no question that the other driver was fully at fault.  That driver was insured with Farmer's Insurance, with a liability limit of $100,000.  Mr. Hurless made a claim with his own insurer, Country, under the UIM provision of his policy, as well as under the Personal Injury Protection ("PIP") provision.  His policy had UIM limits of $250,000 and provided PIP benefits up to $20,000 ($10,000 for medical and $10,000 for wage loss). Mr. Hurless had medical expenses of $13,443, which Country paid up to the policy limit of $10,000. Country calculated Mr. Hurless' wage loss as $32,107.56 per year.  Mr. Hurless contends that at age 52, he was deprived of 13 working years, so his wage loss was $417,443 at a minimum.  Country paid the PIP policy limit of $10,000 for wage loss.  Country did not deny liability for benefits under UIM, but did not immediately pay anything under that provision, despite several requests by Mr. Hurless for the full $250,000.

On May 27, 2010, Mr. Hurless submitted a Proof of Claim and demand for arbitration, seeking the full $250,000 of the UIM coverage, plus waiver of reimbursement of the $20,000 PIP already paid, on top of the $100,000 to be paid by Farmers.  The arbitration was scheduled for November 16 -18, 2010.  On October 27, 2010, Mr. Hurless' attorney wrote to Country, enclosing a "Prehearing Statement of Proof" with medical records and other documentation of his debilitating injury, and amount of wage loss.  The letter included an estimate of damages and prediction of an arbitration award in the range of $750,000 to $1,200,000.  Counsel demanded payment of the $250,000 policy limit by noon on November 12, or Mr. Hurless would seek extra-contractual damages against Country for any amount

ORDER - 2

over $350,000 that was awarded by the arbitrator.

Country did not evaluate the damages at that level, due to the lack of medical evidence, and declined to pay on demand. The matter went to arbitration, and the arbitrator set the amount of damage to the Hurlesses at $995,694. Ten days later, Country issued a check for the UIM policy limit of $250,000. Farmers paid the $100,000 shortly thereafter.

Country filed this declaratory judgment action seeking a determination that it did not violate either the IFCA or the CPA, and that it owes nothing further to defendants as either contractual or extra-contractual damages. In response to the complaint, defendants asserted six counter-claims in their answer, as set forth above. Plaintiff in the motion for partial summary judgment seeks dismissal of four of the six counterclaims, together with the request for *Olympic Steamship* fees. Defendants have opposed the motion as to three of the counterclaims, but not as to the counterclaim for breach of contract or the *Olympic Steamship* fees. Plaintiff has moved separately for certification of certain issues related to the IFCA claims to the Washington supreme Court. The motions shall be addressed separately.

## DISCUSSION

I. <u>Motion for Partial Summary Judgment</u> (Dkt. # 14)

Plaintiff has moved to dismiss defendants' First, Second, Fifth, and Sixth counterclaims, namely the claims for breach of contract, violation of the WAC, violation of the IFCA, and treble damages under the IFCA. Plaintiff also moves to dismiss the request for *Olympic Steamship* fees as not available in this action. Defendants have not opposed the motion as to the breach of contract claim and the *Olympic Steamship* fees, and summary judgment shall be granted as to those without further discussion.

**A. Legal Standard**

Summary judgment should be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). An issue is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" and a fact is material if it "might affect the outcome of the suit under the

ORDER - 3

governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The evidence is viewed in the light most favorable to the non-moving party. *Id*. However, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Triton Energy Corp. v. Square D Co.*, 68 F. 3d 1216, 1221 (9th Cir. 1995). It should also be granted where there is a "complete failure of proof concerning an essential element of the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient" to prevent summary judgment. *Triton Energy Corp.*, 68 F. 3d at 1221. The party opposing summary judgment must cite to specific materials in the record that demonstrate a genuine issue of fact. Fed.R.Civ.P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record as well. Fed.R.Civ.P. 56(c)(3).

**B. Analysis**

(1) WAC Violations

Defendants' Second Counterclaim asserts that Country's "acts and omissions constitute multiple violations of the insurance regulatory provisions of the Washington Administrative Code ("WAC")." Answer and Counterclaims, Dkt. # 6, ¶ 42. Plaintiff has moved for summary judgment on this counterclaim on the basis that there is no independent or private right of action for violations of the insurance regulations set forth in the WAC. Plaintiff is correct. Washington courts have held that there is no clearly expressed intent in RCW 48.30.010 or the WAC creating private causes of action for isolated violations of the WAC insurance provisions. *Escalante v. Sentry Ins.,* 49 Wash. App. 375, 388 (1987); *review denied,* 109 Wn.2d 105 (1988), *overruled on other grounds, Ellwein v. Hartford Accident & Indemnity Co*., 142 Wash. 2d 766 (2001). Instead, private causes of action for violations of the insurance regulations must be brought under the CPA. *Id*. at 390.

WAC violations may also constitute a violation of the IFCA where there has been an unreasonable denial of coverage or payment of benefits. RCW 48.30.015(2), (5); *see, Morris v.*

ORDER - 4

*Country Casualty Insurance Company,* 2011 WL 5166453 at *3 (W.D.Wash. 2011) *(citing Weinstein & Riley v. Westport Insurance Corp.,* 2011 WL 887552 at * 30 (W.D.Wash. 2011). Defendants contend that "[i]n this case, there is an unreasonable failure to pay benefits, so all WAC violations are pertinent to the IFCA remedies." Defendants' Response, Dkt. # 17, p. 11. However, this argument tacitly recognizes that WAC violations of themselves do not create a private right of action; they are "pertinent to the IFCA remedies" which will be discussed below.

Defendants also contend that "WAC violations are also properly the basis of CPA claims." *Id*. While it is true that they may form the basis of a CPA claim, they cannot stand on their own. Defendants may assert WAC violations in support of their CPA claim, which is not the subject of this motion. They may not, however, assert an independent cause of action based on WAC violations. Plaintiff's motion for summary judgment on this counterclaim shall accordingly be granted.

(2) <u>IFCA Claims</u>

Plaintiff contends that the IFCA counterclaims must be dismissed "because IFCA is not triggered unless there is a denial of coverage, and it is indisputable that Country never denied coverage to the Hurlesses." Motion for Partial Summary Judgment, Dkt. # 14, p. 12. Further, "the overwhelming number of courts considering the question have already held that a cause of action under the IFCA must be based on a denial of coverage and not merely on a WAC violation. Determining that IFCA requires a denial of coverage (in fact, an *unreasonable* denial coverage) is, in the first instance, a simple matter of statutory construction." *Id*. (emphasis in original).

The IFCA states, in relevant part,

(1) Any first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action in the superior court of this state to recover the actual damages sustained, together with the costs of the action, including reasonable attorney's fees and litigation costs, as set forth in subsection (3) of this section.

(2) The superior court may, after finding that an insurer has acted unreasonably in denying a claim for coverage or payment of benefits or has violated a rule in subsection (5) of this section, increase the total award of damages to an amount not to exceed three times the actual damages.

ORDER - 5

> (3) the superior court shall, after a finding of unreasonable denial of a claim for coverage or payment of benefits, or after a finding of a violation of a rule in subsection (5) of this section, award reasonable attorneys' fees and actual and statutory litigation costs, including expert witness fees, to the first party claimant of an insurance contract who is the prevailing party in such an action.

RCW 48.30.015 (1) - (3). Subsection (5) lists numerous WAC violations that will trigger the treble damages provision, which defendants seek to invoke in their Sixth Counterclaim.

In response to this argument and the line of cases cited by plaintiff, defendants argue that Country "omits (or ignores) the key language of the statute," because all of the cited cases refer solely to a denial of coverage as the basis for an IFCA claim. Defendants' Response, Dkt # 17, p. 12. Defendants assert that under the plain language of the statute, an IFCA claim can be triggered by an unreasonable denial of payment of benefits as well as by an unreasonable denial of coverage. The Court agrees that this is the correct reading of the statute. IFCA "provides a remedy for the unreasonable denial of a claim for coverage or denial of benefits. " *Haley v. Allstate Insurance Company*, 2010 WL 4052935 at *7 (W.D.Wash. 2010) (citing RCW 48.30.015(1). However, this does not aid defendants, as they have not demonstrated that Country denied payment of benefits under either the PIP or UIM provisions of their insurance policy.

The undisputed evidence in the record shows that Country issued a check for the loss of defendants' vehicle, in the amount of $31,209.40, on October 5, 2009, less than a month after the accident. Declaration of Karen Weaver, Dkt. # 15, Exhibit 2, pp. 11-12. Then began a period of investigation and evaluation of the wage loss claim. On December 2, 2010, ten days after the arbitrator found for defendants in the amount of $995,694.00, Country issued a check for the policy limits of $250,000. *Id.,* p. 13; Exhibit 3, p. 4. The fact that Country did not pay this amount sooner does not establish a "denial of payment" but rather a delay which was caused by a dispute between the parties over the amount of wage loss suffered by Mr. Hurless.

Defendants' position is that on February 22, 2010, Country's claims representative, Jennie Donaldson, determined Mr. Hurless' wage loss to be $2675.63 per month for the purpose of PIP payments, and that by simple calculation Country could have arrived at a total wage loss of

ORDER - 6

$417,398.28 ($2675.63 x 12 months x 13 years) over the next thirteen years of his work life expectancy. *See*, Defendants' Response, Dkt. # 17, p. 2-3. Therefore, according to defendants, Country should have paid the full policy limit of $250,000 at that time. This argument fails to recognize several crucial facts. First, it appears that the income figures provided by Mr. Hurless from his self-employment were for gross sales, not net profit, and thus were not a true measure of his actual income loss. Declaration of Scott Sawyer, Dkt. # 18, Exhibit 13. The flaw in using gross sales figures to estimate income loss was pointed out by Country's economic loss expert Jeffrey Jenson. *Id.*, Exhibit 29. Second, and more importantly, this figure of $2675 per month represented the effect on Mr. Hurless' working ability during the first five months after his accident. Defendants' argument assumes, without any factual basis asserted, that this level of impairment or disability would continue for the next thirteen years, to the end of his working life. Nowhere have defendants pointed to actual evidence that they provided to Country, during the period leading up to the arbitration, which would demonstrate the level of Mr. Hurless' impairment from the accident, or that it was medically determined to be permanent at that level.

The medical records provided by defendants indicate that Mr. Hurless saw orthopedist Stacie Smith, M.D. for treatment after the accident. She provided a report to Country on November 15, 2009, indicating a diagnosis of "lumbarsacral sprain" and "L leg [illegible]." She opined that he "may have partial permanent impairment" and noted that he was at that time working "a few hours a week as of 11/5/09." She designated the disability as continuing through 12/10/09, three months from the date of injury. Declaration of Scoot Sawyer, Dkt. # 18, Exhibit 9. On February 11, 2010, defendants' counsel sent to Country a Work Restriction from Skagit Valley Medical Center "showing that Mr. Hurless is restricted to light work activity," and that this would remain in effect for six weeks from February 1, 2010. *Id.*, Exhibit 14.

The records from Skagit Valley Medical Clinic show that Mr. Hurless was seen for pain in his right knee on January 25, 2010, when a review of prior x-rays indicated "moderate-to-severe-degenerative joint disease of the right knee suddenly aggravated by the recent motor vehicle accident and is ongoing." *Id.*, Exhibit 15. Prior surgery on that knee was noted from a medial

ORDER - 7

scar. *Id*. Mr. Hurless returned on February 1 for an Orthovisc injection to his knee; this is when the work restriction was written. The provider, Alan Clark, PA-C, wrote "recommended no bending, no squatting, no kneeling, seldom climbing stairs, or occasionally standing/walking." *Id*. On subsequent visits for Orthovisc injections the diagnosis was "degenerative joint disease, right knee." *Id*. On February 15, 2010, the date of the third injection, Mr. Clerk noted "decreased pain in his right knee, otherwise without complaints." *Id*.

There is a gap in the medical records provided until June 24, 2010, when Mr. Hurless returned to see Dr. Smith for another disability authorization. This followed correspondence between Country and a legal assistant in the office representing defendants in the claims process in which Ms. Donaldson, the claims representative, stated

> I recently received a call from Dr. Smith's office indicating that they have not seen Mr. Hurless since the last disability authorization was written and will not be authorizing any further disability unless the [sic] Mr. Hurless is seen. I am in the process of sending out reimbursement for the last two weeks. The disability authorization that we have on file is through this Friday June 25, 2010. Please let me know if further disability is authorized, if not, we will process the final wage loss payment for June 24 & June 25.

*Id*., Exhibit 20, p. 2. The legal assistant responded that Mr. Hurless had an appointment on June 24 for this purpose. After seeing Mr. Hurless on that day, Dr. Smith filled out a supplemental report which is ambiguous. After answering "No" to the question "Is patient released for work?" Dr. Smith checked "Modified" in response to the question "If released for work, give date." She then estimated the length of further work time loss as 12 months, and pronounced Mr. Hurless "currently able to work 1 day/week." She also estimated that further treatment would last 6 months. She responded affirmatively to the question, "Will any permanent impairment result from this injury" but nowhere did she state the level of impairment. *Id*., Exhibit 21.

Reference was made at oral argument to a physical capacities examination by Mr. Ted Becker of Everett Pacific Industrial Rehabilitation. Apparently a copy of Mr. Becker's report was provided to Country on October 22, 2010 in preparation for the arbitration. Counsel Timothy Reid, who represented Country at the arbitration, noted that "Mr. Becker found that Mr. Hurless had some limitations, most particularly in the lumbar and the right lower quadrant (ankle

ORDER - 8

problem). He believes Mr. Hurless is capable of full-time work, but only in the light to medium category." *Id*., Exhibit 28.

On October 28, 2010, Mr. Reid received defendants' arbitration notebook and demand letter, indicating an economic loss claim in excess of $1 million. *Id*., Exhibit 27. Mr. Reid advised Country that this was the first time he was made aware of the size of the claim; in response to prior inquiries defendants had stated only that the loss was being "calculated." *Id*. Apparently Country extended a settlement offer of $150,000, based upon the wage loss calculations of their expert Jeffrey Jensen, described above. On November 11, 2010, defendants rejected that offer, stating that Mr. Jensen's report "shows not only extreme bias, but is factually incorrect and fails to consider Mr. Hurless' claim for earning capacity. *Id*., Exhibit 30.  Further,

> Dr. Smith, in her deposition, has already testified that in her opinion Mr. Hurless has sustained a permanent and disabling injury. Although she was not asked at her deposition, she is expected to testify that Mr. Hurless' earning capacity has been impaired and reduced by at least 50%.

*Id*. Defendants' speculation as to what Dr. Smith would say regarding Mr. Hurless' degree and duration of impairment is not evidence. Defendants have failed to point to any evidence of Mr. Hurless' permanent impairment that was provided to Country prior to the arbitration, apart from the cursory "yes" circled on the disability form signed by Dr. Smith on June 24, 2010, after defendants made their arbitration demand. As there was no indication on this form of the degree of impairment which was anticipated to be permanent, it did not provide a basis from which Country could calculate with reasonable accuracy Mr. Hurless' wage loss.

These facts demonstrate that Country did not unreasonably deny payment of benefits, but instead reasonably disputed the amount. The medical evidence presented in opposition to summary judgment, summarized above, paints a picture of a moderate and likely temporary injury—a lumbar strain for which Mr. Hurless was placed on disability for increments of months at a time, together with knee pain that resulted from aggravation of prior degenerative joint disease, and which responded to treatment. As soon as the amount of loss was determined through presentation of evidence to the arbitrator, Country paid the full policy limit.  On the facts

ORDER - 9

presented here, the Court cannot find that the 15-month interval between accident and payment, a delay motivated by a reasonable dispute as to the amount of wage loss, constitutes a denial of payment of benefits so as to trigger the IFCA.

Plaintiff's motion for summary judgment as to defendants' Fifth and Sixth counterclaims under the IFCA shall accordingly be granted, and these counterclaims shall be dismissed. This disposition leaves pending defendants' Third and Fourth counterclaims, for insurance bad faith and for violation of the CPA. Defendants' allegations regarding the claims handling procedure and WAC violations may be brought under these counterclaims.

II. <u>Motion to Certify Issues to the Washington Supreme Court</u> (Dkt. # 28)

Defendants have moved to certify certain questions regarding interpretation of the IFCA to the Washington Supreme Court. In light of the dismissal of defendants' counterclaims under the IFCA, the motion for certification shall be denied as moot.

## CONCLUSION

Plaintiff's motion for partial summary judgment (Dkt. # 14) is GRANTED, and defendants' First, Second, Fifth and Sixth Counterclaims, together with the claim for *Olympic Steamship* fees, are hereby DISMISSED. Defendants' motion for certification of issues related to the IFCA act is DENIED as moot.

Dated this 21st day of June 2012.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER - 10